**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **THOMAS JUSTIN BAILEY,**<br>**AIS # 00325228,**<br><br>**Petitioner,**<br><br>**v.**<br><br>**ANTHONY E. LOWERY, *Sheriff, Baldwin County, Alabama*,**[1]<br><br>**Respondent.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **CIVIL ACTION NO. 1:23-00311-KD-N** |

**ORDER**

Petitioner Thomas Justin Bailey, an Alabama prisoner proceeding without counsel (*pro se*), initiated this action by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254 dated August 14, 2023 (Doc# 1), supplemented by evidentiary material received November 9, 2023 (Doc# 4), challenging his confinement pursuant to a criminal judgment handed down by the Circuit

---

[1] "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].' 28 U.S.C. § 2242; see also § 2243 ('The writ, or order to show cause shall be directed to the person having custody of the person detained') … [L]ongstanding practice confirms that in habeas challenges to present physical confinement[,] the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35, 124 S. Ct. 2711, 159 L. Ed. 2d 513 (2004). At all times during the pendency of this action, the Petitioner has been held at the Baldwin County Sheriff's Corrections Center. *See* https://www.doc.alabama.gov/inmate/inmate-search/ (last visited Aug. 27, 2026).

However, Baldwin County elected a new sheriff while this action was pending. Accordingly, Anthony E. Lowery, the current Sheriff of Baldwin County, see https://sheriff.baldwincountyal.gov/about-us/about-sheriff-lowery (last visited Aug. 27, 2026), is automatically substituted for Huey "Hoss" Mack as the respondent in this action under Federal Rule of Civil Procedure 25(d). *See also* Rule 12 of the Rules Governing Section 2254 Cases in the United States District Courts ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.").

The Clerk of Court is **DIRECTED** to update the docket heading accordingly.

Court of Baldwin County, Alabama.[2] He has also paid the requisite $5 filing fee for this habeas corpus action. *See* (Doc# 3); 28 U.S.C. § 1914(a).

After conducting preliminary review of Bailey's § 2254 petition under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court ordered the Respondent to file an answer or other appropriate response to the petition. (*See* Doc# 6). On April 26, 2024, the Respondent timely filed an answer (Doc# 10) under Rule 5 of the Rules Governing Section 2254 Cases, which includes relevant portions of the record from Bailey's state court proceedings. Bailey has submitted several filings to the Court in reply to the Answer (*see* Docs# 11, 19, 20, 22, 24). Upon due consideration, the undersigned finds that neither an evidentiary hearing nor expansion of the record is necessary, and that Bailey's § 2254 petition is due to be **DENIED** and **DISMISSED with prejudice**.

## I. *Procedural History*

A Baldwin County jury convicted Bailey of the following offenses arising from his sexual abuse of minor twin sisters R.E. and P.E.: four counts of first-degree sodomy in violation of Ala. Code § 13A-6-63(a)(3); three counts of second-degree sodomy in violation of Ala. Code § 13A-6-64(a)(1); one count of attempted first-degree rape in violation of Ala. Code §§ 13A-4-2 and 13A-61-61(a)(3); and one count of attempted first-degree sodomy in violation of Ala. Code §§ 13A-4-2 and 13A-61-63(a)(3) (Circuit Court Case Nos. CC-2019-001961.00, -001962.00, -900137.00, -900138.00, -900139.00, -900250.00, -900251.00, -900252.00, & -900253.00). (*See* Doc# 10-20, PageID.1285-1286 [Answer Exhibit E, 9/9/2022 Ala. Court of Criminal Appeals Memorandum Decision, pp. 1-2]). The circuit court sentenced Bailey to 99 years in prison for each of the first-

[2] Because Bailey challenges a criminal judgment handed down by a state court within this judicial district, *see* 28 U.S.C. § 81(c), this Court has jurisdiction to entertain his habeas petition. *See* 28 U.S.C. § 2241(d).

degree sodomy convictions, and 20 years for each of the remaining convictions, all to be served consecutively. (*Id.*, PageID.1286).

On direct appeal, the Alabama Court of Criminal Appeals (ACCA) *sua sponte* remanded Bailey's case on March 4, 2022, for resentencing because it found the circuit court had imposed an "illegal" sentence by neglecting to impose a term of post-release supervision of not less than 10 years as part of the sentence, as required by Ala. Code § 13A-5-6(c) for Class A felonies such as first-degree sodomy. (*See* Doc# 10-19 [Answer Exhibit D]). On remand, the circuit court "imposed 10 years of post-release supervision for each of [Bailey]'s convictions for first-degree sodomy." (Doc# 10-20, PageID.1286 [Answer Exhibit E, p. 2]). The case then returned to the ACCA, which affirmed Bailey's convictions and sentence in an unpublished memorandum decision issued September 9, 2022. (Doc# 10-20). The ACCA summarily overruled Bailey's application for rehearing of the affirmance on October 7, 2022. (Doc# 10-22 [Answer Exhibit G]). On January 6, 2023, the Supreme Court of Alabama summarily denied Bailey's petition for certiorari review of the ACCA's decision, with both courts issuing their respective Certificates of Judgment that same day. (Doc# 10-24 [Answer Exhibit I]). Bailey did not petition the United States Supreme Court for further review.

Bailey, by then proceeding *pro se*, filed a petition for relief from conviction or sentence under Alabama Rule of Criminal Procedure 32 with the Baldwin County Circuit Court dated January 7, 2023 (Doc# 10-25 [Answer Exhibit J]), along with a supplement to said petition dated January 15, 2023 (Doc# 10-26 [Answer Exhibit K]). After the State responded to Bailey's Rule 32 petition, the circuit court summarily dismissed it on January 30, 2023. (Doc# 10-27 [Answer Exhibit L]). Rather than file a notice of appeal of that order, Bailey filed with the ACCA a "petition for a writ of mandamus [dated February 1, 2023,] requesting that th[e ACCA] direct [Baldwin

County Circuit Court] Judge J. Clark Stankoski to set aside his January 30, 2023, order dismissing [Bailey]'s Rule 32 postconviction petition." (Doc# 10-28, PageID.1412 [Answer Exhibit M]; Doc# 10-29, PageID.1414-1416 [Answer Exhibit N]).

The ACCA ultimately dismissed the mandamus petition on procedural grounds on April 28, 2023. (*Id.*). Bailey then filed a "Petition for Writ of Mandamus" dated May 1, 2023, with the Alabama Supreme Court (Doc# 10-29, PageID.1413 [Answer Exhibit N]), which denied it on August 9, 2023. (Doc# 10-30, PageID.1417 [Answer Exhibit O]). Bailey is deemed to have filed the present habeas petition on August 14, 2023, the date he certifies that he delivered it to custodial authorities for mailing. (Doc# 1, PageID.14); *Taylor v. Williams*, 528 F.3d 847, 849 n.7 (11th Cir. 2008) ("Under the federal 'mailbox rule,' a *pro se* federal habeas petition is deemed to be filed on the date it is delivered to prison authorities for mailing.").

## II. *Analysis*

Cognizant of "the rule that courts should construe a habeas petition filed pro se more liberally than one drawn up by an attorney[,]" *Gunn v. Newsome*, 881 F.2d 949, 961 (11th Cir. 1989) (en banc), the Court construes Bailey's habeas petition (Doc# 1) as alleging the following grounds for relief:

1. He was denied a "right of appeal" because his appellate counsel, Jennifer Sanford, "who never met with [him], used the false information from [prior counsel Kyle] Henderson to submit an appeal that did not represent [Bailey], the facts, or the truth presented and preserved that proved [his] innocence on the record." (Doc# 1, PageID.6, 12). The circuit court ended up appointing another attorney to represent Bailey on appeal, but that attorney "failed to submit a new brief." (*Id.*, PageID.12).

2. The prosecution failed to disclose favorable evidence to Bailey—specifically, a May 2018 doctor's examination by "OB/GYN Dr. West in Foley[,]" Alabama, that purportedly "refuted allegeds' statement." The "[p]rosecution, during trial and during closing arguments, and Detective Seals, twice on the stand, lied and misled the jury by stating that there was no exam…and that it would not matter anyway (which refuted the allegations as described, as they would have produced scarring had they happened—Seals and prosecution are not medical experts) in order to hide the fact that P.E. refuted R.E.'s claims by testifying that events did not happen, when she was under direct examination by prosecution." (*Id.*, PageID.7, 12).
3. Bailey's trial counsel, James Sweet, was ineffective because he:
    a. "did not provide AltaPointe records from discovery to [Bailey] until months after the suppression/dismissal re-hearing (that he falsely claimed [Bailey] waived initially when [he] did not)." Bailey had "denied having made any such statement in [his] substantially different (not 'essentially the same' as Judge Stankoski incorrectly ruled while having evidence to the contrary in front of him) from Mr. Sweet's argument (meaning the supplemental record) of that hearing, and it was not refuted; further, upon finally seeing AltaPointe's records, the official report stated that someone else made said statement…and Ms. Higginbotham perjured herself by attributing that statement (that was not even made by reported person) incorrectly to [Bailey,]" (*id.*, PageID.8, 12);
    b. did not "look[] into [Bailey's] 3 witnesses despite knowing about them for over a year prior to trial (Brandon Michael Grass, Colin Michael Cook, and Jared Allen

Young…); they would have refuted the statements of the alleged and proved there was no silver phone." (*Id.*);

i. Grass was "a long-time family friend, one of [Bailey]'s closest friends since eighth grade, and was at some points in a relationship with" Bailey. Grass "would have testified against the possibility that the alleged acts occurred (he was around so often that he would have noticed anything going on if it had, and he would have testified that [Bailey] only had the one Samsung Galaxy S6 Active blue camo edition with Nintendo controller case)[, which] would have added corroboration and credit to the defense." (Doc# 4, PageID.22);

ii. "Cook is a long-time family friend[,] was in a relationship with [Bailey] at the time of the alleged crimes[, and] would have given similar testimony to Grass." (*Id.*);

iii. "Young would have testified as to the demeanor of the alleged, as they frequently visited [Bailey]'s place of employment whether or not [Bailey] was there. Young also would have testified similarly to Grass and Cook about the phone." (*Id.*);

c. "did not pursue the lies that the medical exam was not performed even though it was[,]" (Doc# 1, PageID.8, 12-13);

d. "did not challenge when P.E. testified that events did not happen while she was under direct examination by the prosecutor, which this fact alone negates corroboration for the state and makes it to where there is insufficient evidence to falsely convict[,]" (*id.*, PageID.13); and

e. "did not bring to light Ms. Higginbotham's perjury, Detective Seals's perjuries, or Detective Seals's falsified police report that stated that while I had been at AltaPointe for days in Daphne and could not leave, I had somehow shown a phone that did not exist to someone in Foley who never left Foley[,]" (*id.*).

4. Bailey experienced "violations of Due Process." (*Id.*, PageID.8).
5. Bailey's right to a speedy trial was violated. (*Id.*, PageID.8, 13).
6. There was "prosecutorial misconduct" and "false evidence" used. (*Id.*).
7. There was insufficient evidence to support his convictions. (*Id.*).
8. The trial court "lacked jurisdiction" because his "right to presence [wa]s violated (which was not properly remedied through the 're-hearing' of the dismissal/suppression motions)." (*Id.*).
9. Bailey has been "illegally held as of 4-11-2022" because "all 496 years was suspended for 10 years of probation…" (*Id.*; *see also* Doc# 4, PageID.20 ("[A]s of 4-11-2022, Petitioner should have been released on probation (3-30 order suspending all 496 years for 5 years probation, 4-11 order overriding Class As to 10 total years with imprisonment suspended."); Doc# 11, PageID.1419 (similar)).

In answer, the Respondent asserts that only Bailey's speedy-trial and sufficiency-of-the-evidence claims have been sufficiently exhausted in state court, that those two exhausted claims are without merit, and that Bailey's other, unexhausted grounds are now procedurally defaulted. The Court agrees.

**a. Claim Exhaustion & Procedural Default**

> "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *accord Ogle v. Johnson*, 488 F.3d 1364, 1368 (11th Cir. 2007) ("The habeas statute requires applicants to exhaust all available

> state law remedies before filing a federal habeas petition."); 28 U.S.C § 2254(b)(1)(A). "Under the exhaustion requirement, a habeas petitioner challenging a state conviction must first attempt to present his claim in state court." *Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L.Ed.2d 624 (2011); *see also Picard v. Connor*, 404 U.S. 270, 276, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971) ("Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies."). "The exhaustion requirement springs from principles of comity, which protect the state court's role in the enforcement of federal law and prevent disruption of state court proceedings." *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010). "Consistent with the purpose of the exhaustion rule, 'state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.' " *Pruitt v. Jones*, 348 F.3d 1355, 1359 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845, 119 S. Ct. 1728); *accord Ward*, 592 F.3d at 1156 ("[T]o exhaust state remedies, a petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review."). In the context of a habeas proceeding in the Alabama state courts, one complete round of Alabama's established appellate review process means that the claim must be presented on appeal to the Alabama Court of Criminal Appeals and on petition for discretionary review to the Alabama Supreme Court. *See Pruitt*, 348 F.3d at 1359.

*Freeman v. Comm'r, Ala. Dep't of Corr.*, 46 F.4th 1193, 1216–17 (11th Cir. 2022). Bailey raised his speedy-trial and sufficiency-of-the-evidence claims at all opportunities during this direct appeal in state court. (Doc# 10-17, PageID.1200 [Answer Exhibit B, p.3]; Doc# 10-21, PageID.1320 [Answer Exhibit F, p.4]); Doc# 10-23 [Answer Exhibit H]).[3] Thus, the Respondent is correct that those claims are sufficiently exhausted so as to permit federal habeas review.

[3] Bailey raised two additional claims in his initial brief to the ACCA: that the trial court erred in allowing admission of Mary Higginbotham's testimony in violation of Alabama's psychotherapist-patient privilege, and also in overruling his objection to the State's use of a dog in the courtroom without affording Bailey the same accommodation. Bailey did not pursue the dog claim in either his application for rehearing or his certiorari petition, and while he did exhaust his motion-to-suppress claim on direct appeal, he does not raise it in the present habeas petition.

After his direct appeal concluded, the only other state-court avenue Bailey had to exhaust his habeas claims was through a Rule 32 petition. *See* Ala. R. Crim. P. 32.4 ("A proceeding under this rule displaces all post-trial remedies except post-trial motions under Rule 24 and appeal. Any other post-conviction petition seeking relief from a conviction or sentence shall be treated as a proceeding under this rule."). However, Bailey failed to exhaust any of the claims raised in his Rule 32 petition because he did not properly appeal the circuit court's dismissal of his petition, instead filing mandamus petitions with the state appellate courts in an unsuccessful attempt to force the circuit court to vacate the dismissal.

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). " 'The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures.' " *Clark v. Comm'r, Ala. Dep't of Corr.*, 988 F.3d 1326, 1329 (11th Cir. 2021) (quoting *Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) (internal quotation mark omitted)). "When the petitioner fails to exhaust state-court remedies 'and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default ... the exhaustion requirement and procedural default principles combine to mandate dismissal,' and federal habeas relief is barred absent an applicable exception." *Id.* (quoting *Bailey v. Nagle*, 172 F.3d 1299, 1303, 1306 (11th Cir. 1999) (per curiam)). *Accord Henderson*, 353 F.3d at 898–99 ("A claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.' " (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991))).

Here, the time for Bailey to appeal the dismissal of his Rule 32 petition has long passed. *See* Ala. R. Crim. P. 32.10(a) ("Any party may appeal the decision of a circuit court according to the procedures of the Alabama Rules of Appellate Procedure to the Court of Criminal Appeals upon taking a timely appeal as provided in Rule 4, Alabama Rules of Appellate Procedure."); Ala. R. App. P. 4(a)(1) (subject to inapplicable exceptions, a "notice of appeal…shall be filed with the clerk of the trial court within 42 days (6 weeks) of the date of the entry of the judgment or order appealed from…"); *Woods v. State*, 371 So. 2d 944, 945 (Ala. 1979) ("Timely filing of notice of appeal is a jurisdictional requisite, and the appeal must be dismissed for lack of jurisdiction if notice of appeal was not timely filed."). If Bailey now "brought his claim[s] as a new Rule 32 petition, it either would be barred by the statute of limitations, *see* Ala. R. Crim. P. 32.2(c)[[4]], or dismissed as a second or successive petition, *see* Ala. R. Crim. P. 32.2(b)[[5],]" both of which are some of "Alabama's firmly established and consistently applied procedural grounds." *Clark*, 988 F.3d at 1329 (quotation omitted). *See also Henderson*, 353 F.3d at 899 (recognizing Alabama Rule 32.2(c)'s limitations period as a "firmly established and consistently applied procedural ground[]"

---

[4] "[T]he court shall not entertain any petition for relief from a conviction or sentence on the grounds [that the constitution of the United States or of the State of Alabama requires a new trial, a new sentence proceeding, or other relief], unless the petition is filed[, i]n the case of a conviction appealed to the Court of Criminal Appeals, within one (1) year after the issuance of the certificate of judgment by the Court of Criminal Appeals under Rule 41, Ala. R. App. P." Ala. R. Crim. P. 32.2(c).

[5] "If a petitioner has previously filed a petition that challenges any judgment, all subsequent petitions by that petitioner challenging any judgment arising out of that same trial or guilty-plea proceeding shall be treated as successive petitions under this rule. The court shall not grant relief on a successive petition on the same or similar grounds on behalf of the same petitioner. A successive petition on different grounds shall be denied unless (1) the petitioner is entitled to relief on the ground that the court was without jurisdiction to render a judgment or to impose sentence or (2) the petitioner shows both that good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice." Ala. R. Crim. P. 32.2(b).

precluding further exhaustion efforts and rendering habeas claims procedurally defaulted); *Hurth v. Mitchem*, 400 F.3d 857, 864 (11th Cir. 2005) ("The sole basis that Hurth has put forward to support his contention that Alabama's Rule 32.2(c) was not firmly established and regularly followed is that, at the time he failed to comply with it, that rule was not jurisdictional in nature. Having rejected Hurth's proposition that the violation of a rule must actually divest the state courts of jurisdiction to decide a claim before the rule will be respected in federal habeas proceedings, we reject his contention that his failure to comply with Rule 32.2(c) did not procedurally bar his ineffective assistance claim. It did.").[6] Because he did not exhaust any claims raised in his Rule 32 proceedings, and because he is now precluded from exhausting them via another Rule 32 petition, all of Bailey's habeas claims, apart from the two noted above that were exhausted on direct appeal, are procedurally defaulted. And "[a] procedurally defaulted claim can support federal habeas relief in only two narrow situations." *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008).

> First, the petitioner may demonstrate cause and prejudice. Cause exists if there was "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986). Such external impediments include evidence that could not reasonably have been discovered in time to comply with the rule; interference by state officials that made compliance impossible; and ineffective assistance of counsel at a stage where the petitioner had a right to

[6] Rule 32 allows for relief where "[t]he petitioner failed to appeal within the prescribed time…from the dismissal or denial of a petition previously filed pursuant to this rule and that failure was without fault on the petitioner's part." Ala. R. Crim. P. 32.1(f). However, Rule 32.2(c) states that "the time for filing a petition under Rule 32.1(f) to seek an out-of-time appeal from the dismissal or denial of a petition previously filed under any provision of Rule 32.1 shall be six (6) months from the date the petitioner discovers the dismissal or denial, irrespective of the one-year deadlines specified in" earlier subparts of Rule 32.2(c). Bailey's Rule 32 petition was dismissed on January 30, 2023, and he discovered the dismissal, at the latest, on February 1, 2023, when he filed his mandamus petition with the ACCA challenging that dismissal. Accordingly, the time for Bailey to seek an out-of-time appeal of the dismissal of his first Rule 32 petition expired, at the latest, on Tuesday, August 1, 2023.

> counsel. *Id.*[[7]] In addition to cause, the petitioner must also show prejudice: that "there is at least a reasonable probability that the result of the proceeding would have been different" had the constitutional violation not occurred. *Henderson v. Campbell,* 353 F.3d 880, 892 (11th Cir. 2003).

*Mize*, 532 F.3d at 1190.

Nothing in the record indicates that Bailey can show cause for failing to exhaust his procedurally defaulted claims in state court. Bailey's filings have expressed dissatisfaction with the performance of his appointed counsel in his direct appeal, appearing to argue that they should have raised, and exhausted, more or different claims on direct appeal. However, Bailey cannot rely on that purported ineffective assistance as "cause" to excuse procedural default because Bailey

---

7

> Ineffective assistance during a stage where the petitioner had a right to counsel is a valid excuse for failing to follow a state procedural rule. *Coleman v. Thompson,* 501 U.S. 722, 753–54, 111 S. Ct. 2546, 2566–67, 115 L. Ed. 2d 640 (1991). On the other hand, at stages where the petitioner had no right to counsel, "it is the petitioner who must bear the burden of a failure to follow state procedural rules." *Id.* at 754, 111 S. Ct. at 2567. Because a petitioner has no right to counsel during state collateral review, even grossly ineffective assistance at the collateral review stage, or no assistance at all, does not constitute cause to excuse a procedural default. *See In re Magwood,* 113 F.3d 1544, 1551 (11th Cir. 1997).

*Mize*, 532 F.3d at 1191. *See also Davila v. Davis*, 582 U.S. 521, 528–29, 137 S. Ct. 2058, 198 L. Ed. 2d 603 (2017) ("Attorney error that does not violate the Constitution, however, is attributed to the prisoner under "well-settled principles of agency law." *Coleman*[ *v. Thompson*]*,* [501 U.S. 722,] 754, 111 S. Ct. 2546[, 115 L. Ed. 2d 640 (1991).] It follows, then, that in proceedings for which the Constitution does not guarantee the assistance of counsel at all, attorney error cannot provide cause to excuse a default. Thus,…*Coleman*…held that attorney error committed in the course of state postconviction proceedings—for which the Constitution does not guarantee the right to counsel, see *Murray v. Giarratano,* 492 U.S. 1, 109 S. Ct. 2765, 106 L. Ed. 2d 1 (1989) (plurality opinion)—cannot supply cause to excuse a procedural default that occurs in those proceedings. 501 U.S., at 755, 111 S. Ct. 2546."). Because Bailey "did not have a right to counsel" on state collateral review, either under the U.S. Constitution or Alabama state law, *see Lane v. State*, No. CR-2022-0720, 2024 WL 5182373, at *12 (Ala. Crim. App. Dec. 20, 2024) (explaining that, except in cases involving a sentence of death, "there is no automatic right to counsel during postconviction proceedings" in Alabama), he "is responsible for whatever errors were made in failing to assert the claim there." *Mize*, 532 F.3d at 1192.

failed to exhaust any claims for ineffective assistance of appellate counsel during his Rule 32 proceedings, and he is now procedurally defaulted from doing so. *See Sealey v. Warden, Georgia Diagnostic Prison*, 954 F.3d 1338, 1365 (11th Cir. 2020) ("A showing of ineffective assistance of appellate counsel in failing to raise a claim on direct appeal can constitute 'cause' so long as the ineffective assistance occurred during a stage when a petitioner had a constitutional right to counsel, *and the ineffective-assistance claim itself is both exhausted and not procedurally defaulted*…" (emphasis added) (citation and quotations omitted)). And Bailey alone bears responsibility for not exhausting those claims in his Rule 32 proceedings, where he had no right to counsel. *Mize*, 532 F.3d at 1190 (even assuming Georgia habeas petitioner had the right to counsel in an earlier post-conviction proceeding, and that counsel there was ineffective for failing to raise claim, petitioner could show "no causal link" between that ineffectiveness and the petitioner's procedural default because petitioner could have still exhausted the claim by raising it in a later collateral proceeding where petitioner did not have the right to counsel, but failed to do so); *Dellinger v. Bowen*, 301 F.3d 758, 766–67, 767 n.10 (7th Cir. 2002) (cited favorably in *Mize* as "holding that even though habeas petitioner's direct appeal counsel may have been ineffective, petitioner had defaulted his underlying claim on both direct appeal and collateral attack, and the latter default could not be excused because petitioner had no constitutional right to an attorney during the collateral attack[,]" 532 F.3d at 1193).

Bailey argues he did fully appeal the dismissal of his Rule 32 petition because his mandamus petitions were the functional equivalent of an appeal. However, the exhaustion doctrine requires that a petitioner exhaust his claims through a state's "*established* appellate review process." Rule 32 clearly states that a circuit court's decision on a Rule 32 petition is to be appealed "according to the procedures of the Alabama Rules of Appellate Procedure to the Court of Criminal

Appeals upon taking a timely appeal as provided in Rule 4, Alabama Rules of Appellate Procedure." Ala. R. Crim. P. 32.10(a). Alabama Appellate Rule 4, in turn, provides that, subject to inapplicable exceptions, "the notice of appeal required by **Rule 3**[ **of the Alabama Rules of Appellate Procedure**] shall be filed with the clerk of the trial court within 42 days (6 weeks) of the date of the entry of the judgment or order appealed from…" Ala. R. App. P. 4(a)(1) (emphasis added). The text of neither Rule 3 nor 4 even mentions mandamus petitions, which are instead governed by a wholly separate rule, Alabama Rule of Appellate Procedure 21.

Bailey claims that he was confused by Alabama Appellate Rule 21(a)(3) (*see* Doc# 11, PageID.1420), which states in relevant part that a mandamus "petition shall be filed within a reasonable time[, and t]he presumptively reasonable time for filing a petition seeking review of an order of a trial court or of a lower appellate court shall be the same as the time for taking an appeal." However, even the terms of that provision indicate that, despite sharing a time limit, filing a mandamus petition is different from "taking an appeal." Bailey also claims that he relied on a statement from the ACCA's opinion in *Brooks v. State* that "petition for a writ of mandamus, not a Rule 32 petition, was the proper avenue for seeking an out-of-time appeal from the denial of a Rule 32 petition[,]" 892 So. 2d at 986–87 (2004). (*See* Doc# 11, PageID.1420). However, that statement also does not purport to equate an appeal with a mandamus petition; regardless, it only concerned the appropriate vehicle for "seeking an out-of-time appeal from the denial of a Rule 32 petition." Bailey's mandamus petition to the ACCA was dated February 1, 2023, only two days after the circuit court had dismissed his Rule 32 petition, meaning at the time it was filed, Bailey

still had ample time to appeal that dismissal, and therefore had no need to seek an out-of-time appeal.[8]

As noted previously, "[t]o establish 'cause'…the prisoner must show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Davila v. Davis*, 582 U.S. 521, 528, 137 S. Ct. 2058, 198 L. Ed. 2d 603 (2017) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)). "A factor is external to the defense if it 'cannot fairly be attributed to' the prisoner." *Id.* (quoting *Coleman v. Thompson,* 501 U.S. 722, 754, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)). Here, Bailey's failure to exhaust his Rule 32 claims is squarely attributable to his own misunderstanding of Alabama's rules for pursuing an appeal in Rule 32 cases, which cannot constitute "cause" to excuse his procedural default of those claims.

---

[8] Moreover, even on its own terms the statement from *Brooks* Bailey claims to have relied on was outdated precedent. It is true that, at one time, the Alabama Supreme Court had held that "the writ of mandamus [wa]s the only remedy available to those who…through no fault of their own, fail to receive notice of the dismissal of their Rule 32 petition in time to effect a timely appeal therefrom." *Marshall v. State*, 884 So. 2d 900, 905 (Ala. 2003) (per curiam) (quotation marks omitted). However, the Alabama Supreme Court amended Rule 32.1(f) effective June 1, 2005, "to provide a different remedy for obtaining an out-of-time appeal from the denial of a Rule 32 petition…" *See Ex parte Bonner*, 926 So. 2d 339, 340 n.1 (Ala. 2005). " 'The amended rule provides that a petitioner may obtain an out-of-time appeal if "[t]he petitioner failed to appeal within the prescribed time from the conviction or sentence itself or from the dismissal or denial of a petition previously filed pursuant to this rule and that failure was without fault on the petitioner's part." Therefore, after June 1, 2005, the proper method of seeking an out-of-time appeal from the denial of a Rule 32 petition is by filing another Rule 32 petition.' " *Id.* (quoting *Ex parte V.S.,* 918 So. 2d 908, 912 n.3 (Ala. 2005)).

To the extent Bailey claims he was attempting to pursue an out-of-time direct appeal under Rule 32.1(f), that argument is similarly misguided because Bailey, through his appointed appellate counsel, timely sought review on direct appeal at all levels of the Alabama appellate process, as evidenced by the fact that his filings there were never dismissed as untimely. Bailey's dissatisfaction with his appellate counsel's performance and the overall result does not change that fact—what Bailey actually wanted was a do-over of his direct appeal, not an "out-of-time" appeal.

**b. Actual Innocence**

> Even without cause and prejudice, the procedural default of a constitutional claim may be excused if enforcing the default would result in a fundamental miscarriage of justice. This exception applies if the petitioner can show that, in light of new evidence, it is probable that no reasonable juror would have convicted him. *Schlup v. Delo,* 513 U.S. 298, 327, 115 S. Ct. 851, 867, 130 L. Ed. 2d 808 (1995). By making this showing of actual innocence, the petitioner may overcome the procedural default and obtain federal review of the constitutional claim. *Id.*

*Mize*, 532 F.3d at 1190. As the Supreme Court has recognized, "the *Schlup* standard is 'demanding' and seldom met…" *McQuiggin v. Perkins*, 569 U.S. 383, 386, 133 S. Ct. 1924, 185 L. Ed. 2d 1019 (2013) (citing *House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006)).

> In establishing an actual innocence exception to procedural default, the Supreme Court explained that "new evidence" of actual innocence includes "evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Schlup*, 513 U.S. at 328 (quoting Henry J. Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. Chi. L. Rev. 142, 160 (1970)). The Court also observed that "[t]o be credible" an innocence claim must be based on "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. When the Court extended this "actual innocence" exception to the statute of limitations, it likewise referenced "new evidence." *McQuiggin*, 569 U.S. at 386.

*Stimpson v. Warden*, No. 22-10190, 2025 WL 484049, at *3 (11th Cir. Feb. 13, 2025) (unpublished). Importantly, in evaluating an "actual innocence" claim, "[w]e ask whether the evidence demonstrates 'factual innocence, not mere legal insufficiency.' " *Id.* at *4 (quoting *Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998)).[9]

---

[9] Other "circuits have split on the kind of 'new evidence' that a petitioner must introduce to establish actual innocence." *Stimpson*, 2025 WL 484049, at *3.

> One approach requires a petitioner to submit evidence that "was 'not available at trial and could not have been discovered earlier through the exercise of due diligence.' " *Osborne v. Purkett*, 411 F.3d 911, 920 (8th Cir. 2005) (quoting *Amrine v. Bowersox*, 238 F.3d 1023, 1029 (8th Cir. 2001), *cert. denied*, 534 U.S. 963 (2001)). Another approach removes that diligence requirement and considers

Bailey's own attestations of innocence are insufficient to establish entitlement to the *Schlup* gateway. *See McCray v. Vasbinder*, 499 F.3d 568, 573 (6th Cir. 2007) ("Oyd McCray's affidavit and testimony that he was not on Bessemore Street at the time of the murder adds little in the way of quality to his actual-innocence claim. A reasonable juror surely could discount his own testimony in support of his own cause. *See Riggins v. Norris*, 238 F.3d 954, 955 (8th Cir. 2001) (noting that court is 'certainly entitled to disbelieve [defendant's] self-serving testimony'); *Cuppett v. Duckworth*, 8 F.3d 1132, 1139 (7th Cir. 1993) ('[W]e have repeatedly held that self-serving statements by a defendant that his conviction was constitutionally infirm are insufficient to overcome the presumption of regularity accorded state convictions.')."). Bailey has also alleged various evidence his trial counsel failed to introduce: Dr. West's May 2018 examination of the victims; unspecified "AltaPointe records;" and the testimony of Brandon Michael Grass, Colin Michael Cook, and Jared Allen Young. As will be explained later, however, Bailey has failed to show that there is even a reasonable probability that the outcome of his trial would have been different had any of that evidence been introduced, much less that no reasonable juror would have

> evidence that was not presented at trial "new," regardless of whether that evidence could have been discovered earlier. *See Griffin v. Johnson*, 350 F.3d 956, 963 (9th Cir. 2003).

*Id. See also* Brian R. Means, Federal Habeas Manual § 9A:146 (June 2025 Update) ("Subsequent to *Schlup*, the circuits have disagreed upon what the Supreme Court meant by the 'new' part of 'new reliable evidence.' Some courts have interpreted this phrase to mean evidence is 'new' for purposes of a *Schlup* analysis so long as it was 'not presented' at trial. Other courts have taken the position that evidence is 'new' only if it was not available at the time of trial through the exercise of due diligence." (citing cases)).

To date, the Eleventh Circuit has not taken a position on the issue. *See Stimpson*, 2025 WL 484049, at *4 ("Ultimately, we need not decide this issue to resolve Stimpson's appeal. Instead, we will assume without deciding that…we can consider all evidence, available and unavailable at trial, in assessing whether he has established actual innocence."). The undersigned will assume without deciding that Bailey may rely on evidence available at trial to show "actual innocence."

convicted him in light of this evidence. Accordingly, Bailey has failed to show "actual innocence" to allow for consideration of his procedurally defaulted claims.

**c. Merits of the Exhausted Claims**

Because Bailey's habeas petition was filed after April 24, 1996, it is subject to application of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"). *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1281 (11th Cir. 2012). The United States Supreme Court has repeatedly made clear that

> AEDPA sharply limits federal review of habeas claims raised by state prisoners. A federal court may grant habeas relief on a claim that a state court resolved on the merits only when the state court's "decision" was "contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts in light of the evidence presented" in state court. 28 U.S.C. § 2254(d). These standards require federal courts to give the "benefit of the doubt" to merits decisions issued by the courts of the sovereign States. *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (*per curiam*). AEDPA review provides an important but limited safeguard: It protects against " 'extreme malfunctions' " in the state courts' adjudication of constitutional claims. *Harrington v. Richter*, 562 U.S. 86, 102, 131 S. Ct. 770, 178 L.Ed.2d 624 (2011). So in order to obtain federal habeas relief, a state prisoner must "show far more" than " 'clear error.' " *Shinn v. Kayer*, 592 U.S. 111, 118, 141 S. Ct. 517, 208 L.Ed.2d 353 (2020) (*per curiam*) (quoting [*Virginia v.* ]*LeBlanc*, 582 U.S. [91,] 94, 137 S. Ct. 1726[, 198 L. Ed. 2d 186 (2017) (*per curiam*)]). The habeas claimant must instead establish that the state court "blunder[ed] so badly that every fairminded jurist would disagree" with the decision. *Mays*[ *v. Hines*], 592 U.S. [385,] 392, 141 S. Ct. 1145[, 209 L. Ed. 2d 265 (2021) (*per curiam*)]. Only then is a decision "so lacking in justification" that its error precludes even the "possibility for fairminded" dispute. *Richter*, 562 U.S. at 103, 131 S. Ct. 770.

*Klein v. Martin*, 607 U.S. 213, 220-21, 146 S. Ct. 589 (2026) (per curiam). *Accord, e.g.*, *Burt v. Titlow*, 571 U.S. 12, 19-20, 134 S. Ct. 10, 187 L. Ed. 2d 348 (2013) (" "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires a state prisoner to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error beyond any possibility for

fairminded disagreement. If this standard is difficult to meet—and it is—that is because it was meant to be. [Federal courts] will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal citations and quotations omitted)); *Woods v. Donald*, 575 U.S. 312, 316 135 S. Ct. 1372, 191 L. Ed. 2d 464 (2015) (per curiam) ("AEDPA's standard is intentionally ' " ' difficult to meet. ' " ' " (quoting *White v. Woodall*, 572 U.S. 415, 419, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 133 S. Ct. 1781, 1786, 185 L. Ed. 2d 988 (2013)))).

The Court has further

> explained that " 'clearly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." *White*, 572 U.S., at [419], 134 S. Ct., at 1702 (some internal quotation marks omitted). "And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Id.*, at [419], 134 S. Ct., at 1702 (same). To satisfy this high bar, a habeas petitioner is required to "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter,* 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).
>
> Adherence to these principles serves important interests of federalism and comity. AEDPA's requirements reflect a "presumption that state courts know and follow the law." *Woodford v. Visciotti,* 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (*per curiam*). When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington, supra,* at 102–103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 575 U.S. at 316. *Accord Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (To show that a state court's "decision involved an 'unreasonable application of' th[e Supreme] Court's precedent…, a prisoner must show far more than that the state court's decision was merely wrong or even clear error. The prisoner must show that the state court's decision is so obviously wrong that its error

lies beyond any possibility for fairminded disagreement. Congress meant this standard to be difficult to meet." (citations and most quotations omitted)).

> Finally, "AEDPA instructs that, when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' " *Burt v. Titlow,* [571] U.S. [12], 134 S. Ct. 10, 15, 187 L. Ed. 2d 348 (2013) (quoting 28 U.S.C. § 2254(d)(2)). In such cases, "[t]he prisoner bears the burden of rebutting the state court's factual findings 'by clear and convincing evidence.' " *Id.* (quoting 28 U.S.C. § 2254(e)(1)). Like the "unreasonable application" standard in § 2254(d)(1), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen,* 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L. Ed. 2d 738 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question ... that does not suffice to supersede the [state] court's determination." *Id.* (alterations and quotation marks omitted).

*Hittson v. GDCP Warden*, 759 F.3d 1210, 1230 (11th Cir. 2014).

> "In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court." *Schriro v. Landrigan,* 550 U.S. 465, 468, 127 S. Ct. 1933, 1937, 167 L. Ed. 2d 836 (2007). The Supreme Court has instructed us that where there is no § 2254(e)(2) bar, "[i]n deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474, 127 S. Ct. at 1940; *see also Boyd v. Allen,* 592 F.3d 1274, 1304-05 (11th Cir.2010); *Aron v. United States,* 291 F.3d 708, 715 n. 6 (11th Cir.2002); *Diaz v. United States,* 930 F.2d 832, 834 (11th Cir.1991); 28 U.S.C. § 2254(d)(2), (e)(1).
>
> A district court is not required to hold an evidentiary hearing if the claims "are merely conclusory allegations unsupported by specifics," *Boyd,* 592 F.3d at 1305 (quotation marks omitted), or "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief," *Schriro,* 550 U.S. at 474, 127 S. Ct. at 1940. As the Supreme Court has explained, "[b]ecause the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." *Schriro,* 550 U.S. at 474, 127 S. Ct. at 1940.

*Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 745 (11th Cir. 2010).

**1. Sufficiency of the Evidence**

The Due Process Clause "prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." *Jackson*[ *v. Virginia*], 443 U.S. [307,] 309, 99 S. Ct. 2781[, 61 L. Ed. 2d 560 (1979)]. As the Supreme Court explained in *Jackson*, "a state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt has stated a federal constitutional claim." *Id.* at 321, 99 S. Ct. 2781. The Court, however, has subsequently "made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson,* [566] U.S. [650], 132 S. Ct. 2060, 2062, 182 L. Ed. 2d 978 (2012) (per curiam). That is:

> First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable.

*Id.* (citations and quotations omitted). "[T]he only question under *Jackson* is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality," and the state court's determination that it was not "in turn is entitled to considerable deference under AEDPA." *Id.* at 2065.

In assessing the sufficiency of the evidence, we ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S. Ct. 2781…Under *Jackson*, the prosecution does not have "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." 443 U.S. at 326, 99 S. Ct. 2781. "When the record reflects facts that support conflicting inferences, there is a presumption that the jury resolved those conflicts in favor of the prosecution and against the defendant." *Johnson v. Alabama,* 256 F.3d 1156, 1172 (11th Cir. 2001)…We…"look to state law for the substantive elements of the criminal offense." *Coleman,* 132 S. Ct. at 2064 (quotation omitted).

*Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 462–64 (11th Cir. 2015) (footnotes omitted).

The ACCA prefaced its memorandum decision on direct appeal with a summary of the trial evidence, including testimony from the two victims, R.E. and P.E.[10] (*See* Doc# 10-20, PageID.1286-1290). In addressing Bailey's sufficiency-of-the-evidence claim, the ACCA held that "[t]he testimony of the victim of a sexual offense is sufficient to establish a prima facie case of that offense[,]" then found that, "[v]iewing the evidence as presented [earlier in the decision] in a light most favorable to the State, the State presented sufficient evidence from which the jury could have reasonably concluded that [Bailey] committed each offense alleged in the indictments." (*Id.*, PageID.1299). This finding was not contrary to, nor involved an unreasonable application of, clearly established federal law, and was based on a reasonable determination of the facts in light of the evidence presented in state court.

In § 2254 proceedings, "a determination of a factual issue made by a State court shall be presumed to be correct[, and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "As the state appellate court recognized, [the] victim[s'] testimony as to [sexual abuse] was alone sufficient to support the conviction[s], and [Bailey]'s arguments concerning the discrepancies between the victim[s'] testimony and the [other] witnesses's [sic] testimonies do not amount to clear and convincing

[10] When the last state court to decide a prisoner's federal claim does not provide a reasoned explanation for denying relief, generally "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning[,]" unless the State can "rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Wilson v. Sellers*, 584 U.S. 122, 125-26, 138 S. Ct. 1188, 200 L. Ed. 2d 530 (2018). Because neither the Alabama Supreme Court's decision denying certiorari review nor the ACCA's decision denying rehearing was accompanied by a reasoned explanation, this Court "looks through" those decisions to the ACCA's initial decision affirming Bailey's criminal judgment.

evidence sufficient to overcome the presumption of correctness of the state court's factual findings. It was within the province of the jury to weigh the credibility of all the witnesses [sic] testimony and to determine that the victim[s'] testimony was credible. *See Jackson*, 443 U.S. at 318–19, 99 S. Ct. at 2788–89 (explaining that it is the duty of the trier of fact 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts')." *Duran v. Walker*, 223 F. App'x 865, 872–73 (11th Cir. 2007) (per curiam) (unpublished). *See also United States v. Kenyon*, 397 F.3d 1071, 1076 (8th Cir. 2005) ("It is well-established…that credibility is the province of the jury, and the jury was free to determine what weight should be given to A.L.'s testimony in light of the evidence cited by Kenyon…Even in the face of inconsistent evidence, a [sexual abuse] victim's testimony alone can be sufficient to support a guilty verdict."); *United States v. Seymour*, 468 F.3d 378, 388 (6th Cir. 2006) ("C.P.'s testimony, in combination with the evidence provided by D.H., D.T., and L.M., was sufficient to permit a reasonable juror to infer that C.P. was penetrated because D.H., D.T., and L.M. all testified that Seymour penetrated each of them during similar sexual assaults. A reasonable juror—who credited C.P.'s testimony on direct examination—could find beyond a reasonable doubt that Seymour also penetrated her genital opening with his finger.").

Bailey was convicted of four counts of first-degree sodomy, three counts of second-degree sodomy, and one count of attempted first-degree sodomy. Per the ACCA's memorandum decision, at the time relevant to Bailey's offenses, Ala. Code § 13A-6-63(a)(3) stated that " '[a] person commits the crime of sodomy in the first degree if…'[h]e, being 16 years old or older, engages in deviate sexual intercourse with a person who is less than 12 years old[,]' " while Ala. Code § 13A-6-64 stated that "[a] person commits the crime of sodomy in the second degree if that person 'being 16 years old or older, engages in deviate sexual intercourse with another person less than 16 and

more than 12 years old.' " (Doc# 10-20, PageID.1298 (one alteration added)).[11] For purposes of those statutes, "deviate sexual intercourse" was "defined as '[a]ny act of sexual gratification between persons not married to each other involving the sex organs of one person and the mouth or anus of another." (*Id.* (quoting then-version of Ala. Code § 13A-6-60(2)). In Alabama, "[a] person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he or she does any overt act towards the commission of the offense." *Id.* § 13A-4-2.

Reasonable minds could conclude that the following trial testimony of victims R.E. and P.E., as set out in the ACCA's memorandum opinion and presumed to have been credited by the jury, provided sufficient evidence to support each of Bailey's sodomy convictions:

- **First instance of first-degree sodomy:** While she and Bailey were in the bathroom of R.E.'s home when R.E. was eight, Bailey "pulled her pants down, sat her on the toilet, and used his mouth and tongue to touch her vagina" (Doc# 10-20, PageID.1288). In other words, Bailey committed an "act of sexual gratification between persons not married to each other involving [R.E.'s] sex organs…and [Bailey's] mouth…"
- **Second instance of first-degree sodomy:** When R.E. "was younger than 12 years old[,]" "[w]hile R.E. slept in the bed with her mother, [Bailey] would enter the room and tell her to come to the room where he was staying. R.E. complied to avoid conflict. Once in his bedroom, [Bailey] would perform oral sex on R.E." (*id.*, PageID.1288-1289)—a second instance in which Bailey committed a "act of sexual gratification…involving [R.E.'s] sex organs…and [Bailey's] mouth…"

---

[11] Per the ACCA's memorandum, Bailey began abusing R.E. began when she was eight years old, and P.E. when she was "about nine years old." The abuse came to light to authorities in 2018 when the victims "were in the eighth grade[,]" and Bailey "was almost 31 years old when the twins disclosed the abuse…" This evidence was sufficient to show that Bailey was "16 years old or older" at the time of each offense.

- **Instance of attempted first-degree sodomy:** R.E.'s testimony indicates that, when she "was younger than 12 years old[,]" Bailey took R.E. to his room for oral sex on multiple occasions while her mother slept. (*Id.*). "If [R.E.] did not comply, [Bailey] would get upset and treat her poorly. If R.E. did not resist, [Bailey] would reward her by giving her something she had wanted." (*Id.*, PageID.1288). It can reasonably be inferred from this testimony that R.E. "did not comply" at least once when Bailey took her to his room for oral sex—that is, it provides evidence of an "overt act" (i.e., coaxing R.E. from her mother's bed into Bailey's room and demanding oral sex) "towards the commission of" an "act of sexual gratification…involving [R.E.'s] sex organs…and [Bailey's] mouth…"
- **Third instance of first-degree sodomy:** Another time when R.E. "was younger than 12 years old[,]" after Bailey made an unsuccessful attempt to "put his penis inside" R.E., he "had R.E. perform oral sex on him" (*id.*)—a third instance of Bailey committing an "act of sexual gratification…involving [R.E.'s] sex organs…and [Bailey's] mouth…"
- **Fourth instance of first-degree sodomy:** Bailey began sexually abusing P.E. when "she was about nine years old[,]" when he "licked her vagina and had P.E. perform oral sex on him" (*id.*, PageID.1289)—a fourth (and possibly fifth) instance of Bailey committing a "act of sexual gratification between persons not married to each other involving [a victim's] sex organs…and [Bailey's] mouth…"
- **First instance of second-degree sodomy:** "P.E. testified that when she was closer to 12 years old, [Bailey] attempted to penetrate her anus with his penis." (*Id.*). While this testimony might not support a finding beyond a reasonable doubt that this incident occurred when P.E. was less than 12 years old, it reasonably supports a finding that P.E. was at least

"less than 16 and more than 12 years old" during this instance of Bailey committing an "act of sexual gratification…involving [Bailey's] sex organs…and [P.E.'s] anus…"

- **Second and third instances of second-degree sodomy:** R.E. "testified generally that she was abused by [Bailey] from the time she was 8 years old until she was 12 or 13 years old[,]" and that Bailey would perform oral sex on her " 'often, [m]aybe once a week or so[,] [m]aybe more.' " (*Id.*). This testimony reasonably supports a finding that, on at least two occasions when R.E. was "less than 16 and more than 12 years old[,]" Bailey committed "act[s] of sexual gratification…involving [R.E.'s] sex organs…and [Bailey's] mouth…"

Bailey was also convicted of one count of attempted first-degree rape. Per the ACCA's memorandum decision, at the time relevant to this offense, Ala. Code § 13A-6-61(a)(3) stated that a " 'person commits the crime of rape in the first degree if [he], being 16 years old or older, engages in sexual intercourse with a member of the opposite sex who is less than 12 years old.' " (Doc# 10-20, PageID.1298-1299). The term "sexual intercourse" "has its ordinary meaning and occurs upon any penetration, however slight; emission is not required." Ala. Code § 13A-6-60(4).[12] That is, "[s]exual intercourse" involves a male defendant's penetration of a female victim's "sexual organ" (i.e., vagina) with his own "sexual organ" (i.e., penis). *See Seales v. State*, 581 So. 2d 1192, 1193-97 (Ala. 1991); *Harris v. State*, 333 So. 2d 871, 874 (Ala. Crim. App. 1976) ('The actual penetration of the female sex organ by the male sex organ is required as an element of rape,

---

[12] A 2019 amendment to § 13A-6-60 renumbered the definition of "sexual intercourse" from subsection (1) to subsection (4) but did not change that definition. *See* 2019 Alabama Laws Act 2019-465 (S.B. 320).

according to all the authorities and this penetration constitutes carnal knowledge, which is synonymous with sexual intercourse." (quotation omitted)).

R.E. testified that, when "she was younger than 12 years old[,]" Bailey "used his hands and penis to touch her vagina[,]" and "would use his hands, 'trying to make it easier for his penis to go in.' " (Doc# 10-20, PageID.1288-1289). R.E. further testified that Bailey "tried to put his penis inside her but that 'it didn't work' and was hurting her so he stopped." (*Id.*, PageID.1288). A reasonable trier of fact could conclude that this testimony is sufficient evidence of attempted first-degree rape—that is, it details "overt act[s] towards the commission of" "sexual intercourse" (i.e., penetration of R.E.'s vagina with Bailey's penis) with "a member of the opposite sex who is less than 12 years old."[13]

In sum, the ACCA reasonably determined that there was sufficient evidence presented at trial to support each of Bailey's convictions.

**2. Speedy Trial**

> The United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. Because the Sixth Amendment right to a speedy trial is undergirded by "unique policies," the "court must set aside any judgment of conviction, vacate any sentence

[13] Bailey claims that, "[w]hile P.E.'s and R.E.'s testimonies seem similar at first glance, when the State questioned P.E. about if P.E., R.E., and [Bailey] were all present during the alleged acts, she (P.E.) testified that they were not[, and that t]his material statement contradicts R.E.'s testimony and negates corroboration to the point that a conviction should not stand." (Doc# 4, PageID.21). Bailey later claims that "it was R.E. who refuted P.E…" (Doc# 11, PageID.1420). Even if such contradictory testimony was introduced at trial, the jury had a chance to consider it and chose to credit R.E. and P.E.'s testimony regardless, and Bailey has failed to show that no rational trier of fact would have done so. Bailey also fails to explain why P.E.'s contradiction of R.E.'s testimony would render P.E.'s testimony wholly incredible as well, or vice versa. Moreover, at least as detailed in the ACCA's memorandum, neither P.E. nor R.E. actually testified that any sexual abuse happened when the other was also present. Rather, it was Higginbotham who testified that, while at AltaPointe, Bailey admitted to her that he would have the victims perform oral sex on him "sometimes together." (Doc# 10-20, PageID.1290).

imposed, and dismiss the indictment if it finds a violation of the defendant's right to a speedy trial." *United States v. Villarreal*, 613 F.3d 1344, 1349 (11th Cir. 2010).

A defendant's Sixth Amendment right to a speedy trial is "unique among the defendant's constitutional rights." *United States v. Vargas*, 97 F.4th 1277, 1286 (11th Cir. 2024). The right to a speedy trial "is a more vague concept than other procedural rights," given the justice system's conflicting needs to be both "swift [and] deliberate." *Barker*[ *v. Wingo*], 407 U.S. [514,] 521[, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972)]. Because both the government and the accused may need time to build their respective cases, "pretrial delay is often both inevitable and wholly justifiable." *Doggett v. United States*, 505 U.S. 647, 656 (1992). The Supreme Court has identified the time needed to "collect witnesses against the accused" and "oppose [the defendant's] pretrial motions" as examples of justifiable delay. *Id*. This right is "consistent with delays and depends upon circumstances." *Barker*, 407 U.S. at 522. Therefore, how much delay is permissible is determined "on an ad hoc basis," and any inquiry into a speedy trial claim "necessitates a functional analysis of the right in the particular context of the case." *Id.* at 522, 530.

The speedy trial right is also unique because "it does not always serve the defendant's interests to assert the right." *Vargas*, 97 F.4th at 1286. In fact, sometimes a delay may benefit the defendant. *Id*. As the Supreme Court has recognized, purposeful delay "is not an uncommon defense tactic." *Barker*, 407 U.S. at 521. Thus, unlike other rights, "deprivation of the right to speedy trial does not per se prejudice the accused's ability to defend himself." *Id*.

In *Barker*, the Supreme Court established four guiding factors for "courts [to] assess in determining whether a particular defendant has been deprived of his right" to a speedy trial. 407 U.S. at 530. Those factors are: (1) the "[l]ength of delay," (2) "the reason for the delay," (3) "the defendant's assertion of his right," and (4) "prejudice to the defendant." *Id.* In considering these factors, courts must engage in a "difficult and sensitive balancing process." *Id.* at 533. "And unless the first three factors weigh heavily against the government, the defendant is generally required to show actual prejudice to receive relief." *United States v. Louis*, 146 F.4th 1328, 1337 (11th Cir. 2025).

Importantly, the four factors "have no talismanic qualities," and no factor is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Barker*, 407 U.S. at 533. [The Eleventh Circuit] ha[s] characterized analysis under the *Barker* factors as "a sliding scale, with few hard and fast rules." *Vargas*, 97 F.4th at 1287.

*Sharifi v. Warden, Holman Corr. Facility*, No. 24-11280, 2026 WL 1785319, at *10–11 (11th Cir. June 22, 2026) (per curiam) (unpublished) (finding that Alabama death-row habeas petitioner who was tried more than five years after his arrest failed to show that the ACCA's determination that he was not denied his constitutional right to a speedy trial was not unreasonable under AEDPA).

In arguing that the trial court erred in denying his motions for speedy trial and motions to dismiss for lack of speedy trial in his brief to the ACCA on direct appeal, Bailey cited the four *Barker* factors and argued that "the State did not establish that T.B.'s delay was not prejudicial: (1) The length of the delay was twenty-seven months when he was finally heard, (2) The State did not have a reason for the delay--no medical exams were needed, no reports were lacking, there was nothing the State was waiting on, (3) T.B. asserted his right to a speedy trial several, several [sic] times, and (4) The defendant was severely prejudiced because memories faded and evidence dissipated." (Doc# 10-17, PageID.1225 (record citations omitted)). The ACCA likewise applied the *Barker* factors in analyzing this claim.

> [T]he first factor, the length of the delay[,] "serves a triggering function: it must first be satisfied for the court to analyze the other factors." *United States v. Oliva*, 909 F.3d 1292, 1298 (11th Cir. 2018). Once this threshold has been met, the court should consider how much longer the pretrial delay "extended beyond the bare minimum necessary to show presumptive prejudice." *Villarreal*, 613 F.3d at 1350 (citation modified). As the length of the delay increases, this factor weighs more heavily against the government. *Id.* For purposes of this factor, a delay exceeding one year is "presumptively prejudicial." *United States v. In-gram*, 446 F.3d 1332, 1336 (11th Cir. 2006) (citation omitted).

*Sharifi*, 2026 WL 1785319, at *11.

In analyzing the length-of-delay factor, the ACCA determined that Bailey's Sixth-Amendment right to a speedy trial attached on May 4, 2018, when he was first arrested, and that Bailey suffered an approximately 30-month delay between that date and the start of his trial on October 26, 2020. (Doc# 10-20, PageID.1300-1301). While the ACCA found that the 30-month

delay "d[id] not necessarily make the delay presumptively prejudicial, because th[e ACCA] ha[d] previously found [in other cases] that similar and shorter delays were presumptively prejudicial, [it] nevertheless, consider the other factors set out in <u>Barker</u>." (*Id.*, PageID.1301).

"[E]ven if a defendant establishes a sufficiently lengthy delay to trigger the other *Barker* factors, it 'does not necessarily mean that factor weighs heavily against the Government; the two inquiries are separate.' " *Sharifi*, 2026 WL 1785319, at *11 (quoting *Oliva*, 909 F.3d at 1298).

> [T]he degree to which th[e first] factor weighs against the government "incrementally increas[es]" as "the delay becomes increasingly protracted." *Villarreal*, 613 F.3d at 1350. But this is not the end of the analysis. The first factor is "[c]losely related" to the second. *Barker*, 407 U.S. at 531. And "even when the length of delay is presumptively prejudicial, it does not weigh heavily against the government unless the second factor, the reason for the delay, also weighs against the government." *United States v. Ogiekpolor*, 122 F.4th 1296, 1305 (11th Cir. 2024). Therefore, even though the length of delay in [a] case was quite long, this factor should be weighed *heavily* against the State only if the second factor also weighs against it.
>
> The second factor is the reason for delay. The State bears the burden of establishing valid reasons for the delay. *Villarreal*, 613 F.3d at 1351. In analyzing this factor, "we weigh the relative culpability of the government and the defendant for the delay." *United States v. Machado*, 886 F.3d 1070, 1079 (11th Cir. 2018).
>
> Different kinds of delay are accorded different weights. When the government deliberately delays the trial to "hamper the defense," this factor should be "weighted heavily against the government." *Barker*, 407 U.S. at 531. Comparatively, a neutral reason such as "negligence or overcrowded courts" is weighed less heavily against the government. *Id*. And valid reasons, "such as a missing witness" will "justify appropriate delay." *Id*. Importantly, the "government's inability to arrest or try a defendant because of the defendant's own evasive tactics constitutes a valid reason for delay." *Villarreal*, 613 F.3d at 1351…"The responsibility for a delay requested by [the defendant] does not rest with the government." [*United States v.*] *Louis*, 146 F.4th [1328,] 1338[ (11th Cir. 2025)] (citation modified)…Where the defendant and "the government [both] bear some responsibility for putting off the trial," the second *Barker* factor does not ordinarily weigh against the government. *See United States v. Register*, 182 F.3d 820, 827 (11th Cir. 1999); *see also United States v. Dunn*, 345 F.3d 1285, 1296 (11th Cir. 2003) (concluding that the second *Barker* factor didn't weigh heavily

> against the government where "there [was] no indication that the prosecution was any more responsible than the defense for the delay").

*Id.* at **12-13.

The ACCA addressed the reasons-for-delay factor as follows:

> [Bailey] filed a motion to dismiss for lack of a speedy trial on February 26, 2020. At the hearing on his motion to dismiss in June 2020, defense counsel noted that after the initial indictments were issued, the cases were set for trial in February 2020. When the cases were reindicted in November 2019, defense counsel moved for and received a continuance of the cases to May 2020 because of the change in the indictments. The State had objected to the continuance – the State acknowledged that it had erred in seeking the first indictments based on allegations of force; but, the State argued, defense counsel had been provided discovery and was aware that the State was reindicting to remove the allegations of the use of force and to indict based on the parties' age. The State contended that it was ready to go to trial in February 2020 and did not think defense counsel's argument that he needed time to prepare after reindictment was "appropriate" when counsel had notice of the changes. The delay between [Bailey]'s arrest and indictment was noted, but was not addressed, at the hearing. Neither the parties nor the record indicate why the trial was not held in May 2020.[[14]]
>
> Even if this Court considered the delay caused by the State to be negligent, the delay would not weigh heavily in favor of finding a speedy-trial violation.

(Doc# 10-20, PageID.1302-1303 (record citation omitted)).

Bailey bears at least some responsibility for the delay in continuing trial from February 2020 to May 2020 because he requested that continuance after his November 2019 reindictment, over the State's objection. *See Louis*, 146 F.4th at 1338, *cert. denied*, 146 S. Ct. 1663 (2026). Even if the rest of the delay is attributable to the State, "[w]here the defendant and 'the government [both] bear some responsibility for putting off the trial,' the second *Barker* factor does not ordinarily weigh against the government." *Sharifi*, 2026 WL 1785319, at *13 (quoting *Register*,

[14] The undersigned notes that by May 2020 the global COVID-19 pandemic had spread through much of the United States, with courts around the nation suspending or significantly limiting operations during that time.

182 F.3d at 827). Here, the ACCA nevertheless appeared to weigh the second factor against the State, though "not…heavily…" While it could have chosen not to weigh this factor against the State at all, this finding was still objectively reasonable.

> [Regarding] the third factor[,] the defendant's assertion of his right to a speedy trial[, t]he defendant's assertion of his right "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531–32. Generally, the weight attached to this assertion "will differ with the circumstances of the defendant's demand." *Villarreal*, 613 F.3d at 1354. For instance, courts may weigh the "frequency and force" of a defendant's invocations of his right to a speedy trial. *Barker*, 407 U.S. at 529. "These assertions, however, must be viewed in the light of [his] other conduct." *United States v. Loud Hawk*, 474 U.S. 302, 314 (1986).

*Id.* at *13.

The ACCA addressed the third *Barker* factor as follows:

> The record in this case indicates that [Bailey] filed a litany of pro se letters and motions. Although these letters are largely illegible and do not clearly assert [Bailey]'s right to a speedy trial, defense counsel asserts that these documents put the State on notice that [Bailey] wanted to go forward. This Court disagrees. The first clear assertion occurred in his motion to dismiss on February 26, 2020. Because [Bailey] did not assert his right to a speedy trial and waited over 21 months to allege that his right had been violated, this factor does not weigh against the State.

(Doc# 10-20, PageID.1304).

Having viewed Bailey's *pro se* pretrial motions and notices provided with the Respondent's answer (Doc# 10-2, PageID.185-206), the undersigned finds that the ACCA's characterization of those filings was not an unreasonable determination of fact. Moreover, the ACCA's finding as to the third *Barker* factor was neither contrary to, nor involved an unreasonable application of, clearly established federal law. Indeed, "[t]he Supreme Court has held that the third factor does not weigh in a defendant's favor—even when they repeatedly moved for dismissal on speedy trial grounds—where those assertions were accompanied by 'frivolous petitions' and

'repetitive and unsuccessful motions.' " *Sharifi*, 2026 WL 1785319, at *13 (quoting *Loud Hawk*, 474 U.S. at 314–15).

> The fourth and final factor is prejudice to the defendant. A defendant ordinarily must show actual prejudice unless "the first three *Barker* factors weigh *heavily* against the Government." *Vargas*, 97 F.4th at 1288 (citation modified) (emphasis in original). "Prejudice is assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Louis*, 146 F.4th at 1339 (citation modified). In *Barker*, the Supreme Court explained that the speedy trial right was particularly intended to "prevent oppressive pretrial incarceration," "minimize anxiety and concern of the accused," and "limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

*Id.* at *14.

Because the ACCA reasonably determined that Bailey "failed to show that the first three *Barker* factors weighed heavily against the government, [Bailey] must show actual prejudice." *Id.*[15] The ACCA addressed the prejudice factor, and Bailey's overall entitlement to relief on his speedy-trial claim, as follows:

> At the hearing on his motion to dismiss, defense counsel alleged that he was prejudiced because he had been incarcerated since his arrest and had not been able to assist in preparing a defense by getting in contact with people he associated with at the time of the offenses. In his brief on appeal, [Bailey] claims that he was severely prejudiced by the delay "because memories faded and evidence dissipated."
>
> In this case, there is no evidence that [Bailey] was harmed as a result of the delay in proceeding to trial. [Bailey] made bare allegations and did not show how the delay adversely affected him so as to undermine the fairness of the trial.
>
> Based on the foregoing, this Court cannot say that [Bailey]'s speedy trial rights were violated. Even if this Court were to conclude that the delay between [Bailey]'s

[15] At the very least, Bailey has not shown that the ACCA's decision not to weigh the second and third factors *heavily* against the State was unreasonable. Therefore, he was required to show actual prejudice.

> arrest and his trial was presumptively prejudicial, the remaining *Barker* factors do not warrant relief.

(Doc# 10-20, PageID.1305-1306).

The ACCA's determination was objectively reasonable. With regard to the prejudice in the form of impairing the defense, *Barker* noted: "If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown." *Barker*, 407 U.S. at 532. Bailey did not identify any witnesses helpful to his defense who died or disappeared during the delay of his trial, or who were in any way hindered in their ability to give accurate helpful testimony by the passage of time, nor has he alleged with any specificity what "evidence dissipated" by the time trial commenced. *See United States v. Clark*, 83 F.3d 1350, 1354 (11th Cir. 1996) (per curiam) ("Finding Clark had an adequate opportunity to demonstrate impairment at the hearing on his motion to dismiss the indictment, we agree with the district court's conclusion that Clark's showing of prejudice was 'weak.' At the hearing, the district court heard testimony from the private detective allegedly hired by Clark to locate the two Government witnesses. This testimony was both unclear and unpersuasive, and Clark's mere conclusory allegations of impairment are insufficient to constitute proof of actual prejudice."); *Castillo v. Florida*, 630 F. App'x 1001, 1007 (11th Cir. 2015) (per curiam) (unpublished) ("Castillo cannot show prejudice from this delay because he failed to identify any potential witnesses or items of evidence that were lost as a result of the delay."). Indeed, the passage of time had just a much likelihood of causing the two victims' memories to fade. Given that their testimony constituted the primary evidence against him, Bailey actually stood to benefit from the passage of time in this regard.

Accordingly, the ACCA's determination that Bailey was due no relief on his speedy-trial claim was reasonable.

**d. Merits of Unexhausted Claims**

Notwithstanding that Bailey is already due no relief on them because they are procedurally defaulted, the undersigned finds that Bailey's unexhausted claims are also without merit. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). The undersigned addresses each in turn.

**1. Denial of "Right to Appeal"**

The Supreme Court has held that "[t]here is…no constitutional right to an appeal" at all. *Jones v. Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983). Regardless, this argument is refuted by the record. As was noted previously, *see* n.8, *supra*, Bailey was able to exhaust his direct appeal at all levels of the Alabama appellate process. The undersigned disagrees with Bailey's apparent belief that the circuit court's appointing him new appellate counsel during his resentencing on remand constituted an acknowledgement that his previous appellate counsel "misrepresented" Bailey and "nullified what she presented, leaving [Bailey]'s letter-motions as the valid appeal issues that were never addressed…" (Doc# 24, PageID.1452; *see also* Doc# 11, PageID.1419 ("There still has not been an appeal submitted on [Bailey's] behalf. As supported by the record from the 3-30-2022 intermediary resentencing hearing (and its 4-11-2022 equivalent, Jennifer Evans Sanford misrepresented [Bailey] and had been retroactively removed from his case, making anything she submitted moot.")). A review of the transcript of the first resentencing

hearing following remand,[16] where Bailey was appointed new counsel, shows the circuit court made no finding of "misrepresentation" by Sanford, nor did it purport to "retroactively" remove her and/or invalidate anything she had already filed. Rather, on Bailey's statement that he "need[ed] appellate counsel that [he] can actually speak to and can represent" him, the circuit court simply appointed Bailey new counsel without commenting on the performance of prior counsel. (*See* Doc# 10-16, PageID.1183-1184). Bailey acknowledged the appointment of new counsel, stating "I appreciate that." (*Id.*, PageID.1184).

To the extent Bailey argues that the ACCA was required to consider his *pro se* briefs once Sanford had been terminated as counsel, that belief was mistaken. Under Alabama Rule of Appellate Procedure 31(a), "[w]hen a party is represented by counsel, the [ACCA] clerk may not accept a brief from that party." More generally, the ACCA has recognized that, "[w]hile a defendant has a right to be represented by counsel or to represent himself, he is not entitled to a hybridized representation of his own design." *Moody v. State*, 888 So. 2d 532, 560 (Ala. Crim. App. 2003) (per curiam). Here, Bailey did not ask the circuit court to allow him to proceed *pro se* on appeal. Rather, he expressly asked for new counsel, and thanked the circuit court for doing so. To the extent Bailey claims that substitute counsel was ineffective for not raising additional issues, Bailey has failed to allege what those issues were. Therefore, this Court is unable to judge whether those issues had substantial merit. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (counsel "is not ineffective for failing to raise claims reasonably considered to be without merit" (quotation omitted)); *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (per curiam) ("Failing to make a meritless objection does not constitute deficient performance.").

---

[16] Two resentencing hearings were ultimately held on remand, due to the circuit judge's misinterpretation of the ACCA's remand instructions at the first hearing.

**2. Failure to Disclose May 2018 Examination by Dr. West**

The undersigned construes this ground as asserting a claim under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999). "[S]trictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Id.*

Bailey has not shown there is a reasonable probability that introduction of Dr. West's examination report of the victims would have produced a different verdict. Bailey suggests that Dr. West's report would have shown an absence of "scarring" in the victims from Bailey's sexual abuse. However, the trial evidence indicated that Bailey's abuse largely involved oral sex, with only one attempted penetration of P.E.'s anus and of R.E.'s vagina, neither of which were successful. The evidence also does not indicate that Bailey used violent force on either of these attempts. Thus, the absence of any "scarring" would not have substantially undermined the victims' testimony. And apart from showing a lack of scarring, Bailey fails to explain how Dr. West's report would have made it more apparent that "P.E. refuted R.E.'s claims by testifying that events did not happen." (Doc# 1, PageID.7, 12).

**3. Ineffective Assistance of Trial Counsel**

"The right of a state criminal defendant to effective assistance of counsel springs from the Sixth and Fourteenth Amendments to the United States Constitution…" *Borden v. Allen*, 646 F.3d 785, 818 (11th Cir. 2011). Claims of constitutionally ineffective assistance of counsel are analyzed

"under the rubric set forth in *Strickland v. Washington*, 466 U.S. 668, 684-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) and its progeny." *Id.* "To establish an ineffective assistance of counsel claim, a defendant must show that (1) 'counsel's representation fell below an objective standard of reasonableness' and (2) that such failure prejudiced him in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (per curiam) (quoting *Strickland*, 466 U.S. at 687-688, 694).

" 'Conclusory allegations of ineffective assistance are insufficient.' " *Wilson v. United States*, 962 F. 2d 996, 998 (11th Cir. 1992) (per curiam) (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991). Moreover, "[b]ecause both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) (citation omitted). *See also Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) ("A habeas petitioner claiming ineffective assistance of counsel must carry his burden on both *Strickland* prongs, and a court need not address both prongs if the defendant has made an insufficient showing on one."); *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."). "The *Strickland* test is not easily met; … 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between. []' " *Johnson*, 256 F.3d at 1176 (quoting *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (citation omitted))).

"The test for ineffectiveness is not whether counsel could have done more; perfection is not required." *Waters*, 46 F.3d at 1518. *Accord, e.g., Burt*, 571 U.S. at 24 ("[T]he Sixth Amendment does not guarantee the right to perfect counsel; it only promises the right to effective assistance…"). "A lawyer can almost always do something more in every case. But the Constitution requires a good deal less than maximum performance." *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992).

> In evaluating the first, or "performance," prong of *Strickland*, "[j]udicial scrutiny of counsel's performance must be highly deferential." [*Strickland*, 466 U.S.] at 689, 104 S. Ct. at 2065. Because retrospective evaluation of a lawyer's performance can be difficult, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that … the challenged action might be considered sound trial strategy." *Id.* (internal quotations omitted). A petitioner must identify specific acts or omissions that were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient only if their "were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S. Ct. at 2066. Simply put, the deference afforded an attorney's decision is great and the bar for proving a Sixth Amendment violation is high. In light of the "strong presumption" in favor of competence,"…in order to prove deficient performance, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).
>
> Under the second, or "prejudice," prong of *Strickland*, a petitioner must "affirmatively prove prejudice" by showing that counsel's errors "actually had an adverse effect on the defense." 466 U.S. at 693, 104 S. Ct. at 2067. This requires a showing of more than "some conceivable effect on the outcome of the proceeding." *Id.* Instead, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068. Although this standard is difficult to meet, it is significant that a petitioner must show only a reasonable probability that the outcome would have been different; he "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693, 104 S. Ct. at 2068. When evaluating this probability, "a court hearing on an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695, 104 S. Ct. at 2069.

*Brownlee v. Haley*, 306 F.3d 1043, 1059-60 (11th Cir. 2002).

Bailey has failed to allege sufficient facts showing he was prejudiced by any of trial counsel's purported deficiencies. As to the "AltaPointe records from discovery" Bailey alleges Sweet delayed in showing him, Bailey largely fails to describe their contents or explain how his seeing them sooner would have affected his case. At most, he claims an "official report" contradicted Higginbotham's testimony that Bailey admitted to her that he abused P.E. and R.E. However, Bailey does not claim that Higginbotham herself prepared this "official report," and at trial the jury had a chance to consider both Higginbotham's testimony, and Bailey's testimony claiming that he only told Higginbotham he was suspected of abusing P.E. and R.E. without admitting whether it was true. Bailey has failed to show a reasonable probability that admission of this "official report" would have changed the outcome at trial.

As for the failure to call three witnesses, per Bailey's allegations, Grass and Cook would have testified that they neither observed nor perceived any abuse of the victims during their purportedly frequent visits with Bailey, while Young, who was apparently a co-worker of Bailey's, would have provided unspecified testimony about the "demeanor" of the victims when they visited Bailey at work. Bailey fails to allege what about the "demeanor" of the victims Young would have testified to such that there was a reasonable possibility the results at trial would have been different. As for Grass and Cook, a reasonable attorney would have determined their highly general testimony—amounting to little more than "I personally never noticed anything amiss"—to be of limited positive value compared to the risk of calling them. Per Bailey's allegations, Grass and Cook were both were long-time friends of his, he had been in a prior "relationship" with Grass, and he was in a "relationship" with Cook at the time of the alleged crimes. The State likely would have pointed this information out on cross-examination to show that Grass and Cook were biased in favor of Bailey, and may have also been able to elicit less-flattering details about Bailey from

their lengthy relationships with him. Moreover, Bailey has failed to show that there is a reasonable probability that any of this testimony would have resulted in a different outcome at trial. To satisfy *Strickland*'s "prejudice" prong, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112.

All three would have also apparently testified about Bailey only owning one cellphone that was not "silver." Bailey fails to explain the significance of the "silver phone" in his briefing. A review of the trial transcript indicates that R.E. testified to Bailey showing her pornography and taking pictures of her during the abuse with a "silver" phone (Doc# 10-6, PageID.599-600), while P.E. testified Bailey did the same to her on "a smartphone with a silver case." (*Id.*, PageID.616-617). The victims' brother also described Bailey's cellphone case as looking like an old-style "Nintendo controller" with a "gray-silverish"/"silver" color. (*Id.*, PageID.664-665, 667). Neither P.E. nor the brother knew what color the phone was, only the case. (*Id.*, PageID.624-625, 664, 667). Both P.E. and the brother also testified to Bailey possessing a second, "black" cellphone; the lead detective for the case, Emmanuel Seals, testified that investigating authorities found Bailey in possession of a black cellphone, but that a silver one was never found. For his part, Bailey testified that he "[f]or years" only possessed a single cellphone, one with "a black front and black and blue camo back…in a black case with a gray Nintendo controller printed on the back." (Doc# 10-7, PageID.706-707).

The discrepancy in phone colors does not appear to be a material fact—Bailey's use of a phone during the abuse was not an element of any of the offenses, *see supra*, and the ACCA made no mention of its color in its memorandum decision. Regardless, Bailey admitted in his testimony that the one phone he purportedly owned had "a gray Nintendo controller printed on the back," which is similar to the brother's testimony that the case on Bailey's primary phone was "gray-

silverish" and looked like a "Nintendo controller." P.E.'s testimony that Bailey's phone had a "silver case" is at least reconcilable with Bailey's and her brother's description of the phone, and Grass, Cook, and Young's testimony corroborating that Bailey's phone had a Nintendo controller case, as Bailey claims it would have, could have served to bolster P.E. and her brother's testimony regarding the appearance of Bailey's phone. Given that the testimony at trial was ambiguous as to what color phone Bailey used during the abuse, and that Bailey's use of a phone was ultimately irrelevant to any of the charged conduct, Bailey has failed to show that Sweet performed deficiently in failing to call Grass, Cook, and Young to testify about the appearance of Bailey's phone. Bailey has also failed to show that such testimony would have had more than just a "conceivable" effect on the trial outcome.

As to counsel's purported failure to uncover Dr. West's exam, Bailey cannot show he was prejudiced by this for the reasons already explained previously. As to counsel's purported failures to challenge P.E.'s testimony, Bailey does not identify what particular testimony counsel should have challenged or why. Thus, the Court is unable to judge even whether such challenges would have had merit. As to counsel's failure to challenge Detective Seals's purportedly falsified police report that stated that "while [Bailey] had been at AltaPointe for days in Daphne and could not leave, [Bailey] had somehow shown a phone that did not exist to someone in Foley who never left Foley[,]" there is no indication this report was admitted into evidence, and Bailey fails to explain what testimony Detective Seals gave that this purportedly false statement would have undermined.[17] Finally, other than Higginbotham's purportedly false testimony about Bailey's

[17] Detective Seals's testimony does not appear to have been particularly material. The ACCA's memorandum decision mentions Seals only once, noting that he went to Bailey's place of employment after gathering statements at the victims' school and confronted Bailey with the allegations of abuse, which Bailey denied. (Doc# 10-20, PageID.1287).

confession, and Detective Seals's purportedly false testimony about the existence of Dr. West's examination report, Bailey fails to identify what other purported "perjuries" they committed at trial.

In sum, Bailey has failed to allege a meritorious claim of ineffective assistance of trial counsel.

**4. "Right to Presence" at Pretrial Hearing on Suppression/Dismissal Motions Violated**

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." However, the Sixth Amendment " 'does not confer upon the defendant the right to be present at every conference at which a matter pertinent to the case is discussed, or even at every conference with the trial judge at which a matter relevant to the case is discussed.' " *United States v. Downs*, 61 F.4th 1306, 1314 (11th Cir. 2023) (quoting *United States v. Vasquez*, 732 F.2d 846, 848 (11th Cir. 1984) (per curiam)). "The Due Process Clause, on the other hand, offers a criminal defendant a somewhat broader right to be present." *United States v. Novaton*, 271 F.3d 968, 997 (11th Cir. 2001)

The Supreme Court described this right as follows:

> The Court has assumed that, even in situations where the defendant is not actually confronting witnesses or evidence against him, he has a due process right "to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." ... Although the Court has emphasized that this privilege of presence is not guaranteed "when presence would be useless, or the benefit but a shadow," ... due process clearly requires that a defendant be allowed to be present "to the extent that a fair and just hearing would be thwarted by his absence".... Thus, a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure.

*Id.* at 997-98 (quoting *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105–08, 54 S. Ct. 330, 78 L. Ed. 674 (1934))).

Bailey has failed to show that his non-presence at the initial hearing on his motions to dismiss/suppress warrants relief under either the Fifth or Sixth Amendment. The Eleventh Circuit has held that the Sixth Amendment right to presence "does not extend to evidentiary hearing on suppression motion…" *Blanco v. Singletary*, 943 F.2d 1477, 1507 n.53 (11th Cir. 1991) (citing *United States v. Gradsky*, 434 F.2d 880 (5th Cir. 1970)).[18] *See also United States v. Pepe*, 747 F.2d 632, 653-54 (11th Cir. 1984) ("The *James* hearing in this instance, like the hearing[] in *Gradsky*…, was simply a pretrial evidentiary proceeding[,]" at which the defendant had no Sixth Amendment right to be present."). As for any Fifth Amendment claim, Bailey has failed to allege how he was deprived of a "fair and just hearing" on his motions by being absent from the initial hearing on his pretrial motions, particularly since he acknowledges the circuit court held a second hearing on those motions at which Bailey was present.[19]

---

[18] On "October 1, 1981 pursuant to the Fifth Circuit Court of Appeals Reorganization Act of 1980, P.L. 96-452, 94 Stat. 1995, … the United States Court of Appeals for the Fifth Circuit was divided into two circuits, the Eleventh and the 'new Fifth.' " *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc). "The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981." *Smith v. Shook*, 237 F.3d 1322, 1325 n.1 (11th Cir. 2001) (per curiam).

[19] To the extent Bailey his claiming his right to presence under Alabama law was violated, the United States Supreme Court has "repeatedly held that ' "federal habeas corpus relief does not lie for errors of state law." ' " *Wilson v. Corcoran*, 562 U.S. 1, 5, 131 S. Ct. 13, 178 L. Ed. 2d 276 (2010) (per curiam) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 116 L.Ed.2d 385 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 111 L.Ed.2d 606 (1990))).

**5. Bailey is Being "Illegally Held" Because His Sentence was Suspended**

Bailey claims he is being illegally incarcerated because, on remand from the ACCA for resentencing, the circuit court suspended his imprisonment terms for ten years of probation. That is not reflected in the transcript of the resentencing hearing—rather, the circuit court "ordered Mr. Bailey to serve a term of ten years of supervised probation *after he is released*[,]" and made no mention of a suspended sentence. (Doc# 10-16, PageID.1184-1186 (emphasis added)).

Bailey claims that a suspended sentence is the only way to read the circuit court's written resentencing orders, which the Respondent did not file into the record. However, the ACCA appears to have not interpreted the circuit court's resentencing the way Bailey does when the case returned to it. Indeed, the circuit court imposing a suspended sentence on remand would have violated both the ACCA's limited remand directive and Alabama law, which states that a trial court "shall have no power to suspend the execution of sentence imposed upon any person who has been found guilty and whose punishment is fixed at death or imprisonment in the penitentiary for more than 15 years." Ala. Code § 15-22-50. Because the circuit court imposed an imprisonment sentence far in excess of 15 years, it lacked authority to impose a suspended sentence. *See Belote v. State*, 185 So. 3d 1154, 1155 (Ala. Crim. App. 2015) ("In the present case, because the circuit court imposed a sentence of 16 years' imprisonment, pursuant to § 15–22–50, the circuit court was without authority to suspend the execution of Belote's sentence."), *overruled on other grounds by McGowan v. State*, 346 So. 3d 1 (Ala. Crim. App. 2019); *Taylor v. State*, 212 So. 3d 970, 971 (Ala. Crim. App. 2014) ("Taylor was sentenced to 18 years' imprisonment and was placed on probation. [Under s]ection 15–22–50, Ala. Code 1975,…the circuit court had no jurisdiction to impose the

probationary part of Taylor's sentence.”).[20] And, as the ACCA noted when it *sua sponte* remanded Bailey’s case for resentencing: “ ‘Matters concerning unauthorized sentences are jurisdictional,’ Hunt v. State, 659 So.2d 998, 999 (Ala. Crim. App. 1994); therefore, th[e ACCA] may take notice of an illegal sentence at any time.” (Doc# 10-19, PageID.1281). The ACCA had already *sua sponte* determined that the circuit court had imposed an illegal sentence by failing to include at least a 10-year term of post-release supervision. That it did not similarly note the imposition of an illegal suspended sentence on return from remand is strong evidence that Bailey’s interpretation of the circuit court’s resentencing orders is mistaken.

**6. “Violations of Due Process,” “Prosecutorial Misconduct,” and “False Evidence”**

Except as these claims may relate to Bailey’s other claims that have been addressed and rejected, they “are merely conclusory allegations unsupported by specifics,” and thus warrant neither an evidentiary hearing nor relief. *Allen*, 611 F.3d at 745 (quotation omitted).

**e. Motions to Consider New Case Law**

Bailey has filed four motions to consider new case law in 2026, the earliest dated June 18 and the latest dated August 28. (Docs# 33, 34, 35, 36, 37). These motions are due to be granted, in that the Court has considered the new case law cited in those motions. However, none of those cases change the determination that Bailey’s petition should be dismissed without an evidentiary hearing.

All five motions cite to non-binding out-of-circuit case law. Three of those motions—the July 13, August 17, and August 28 ones (Docs# 34, 36, 37)—attempt to bolster the merits of some

[20] The circuit court similarly lacked authority to impose a “split sentence” because a defendant who is either convicted of a “sex offense involving a child [under the age of 12] that is a Class A or Class B felony offense,” or who receives a sentence of more than 30 years is ineligible for a split sentence. Ala. Code § 15-18-8(a). Bailey was disqualified under both of those exceptions.

of Bailey's procedurally defaulted claims: the ineffective assistance of his trial counsel, the State's suppression of Dr. West's examination report, and Detective Seals lying about the existence of the report and other matters at trial. However, it is unclear how the facts of the cases cited in those motions[21] are materially similar to Bailey's, and regardless they do nothing to change at least the determination that those claims are procedurally defaulted.[22] The other two motions—the June 18 and July 23 ones (Docs# 33, 35)—cite case law in support of new claims not previously asserted in Bailey's petition: that Detective Seals was wrongly allowed to sit at the prosecution's table during trial, that a juror should have been struck, and that trial counsel did not address errors in Bailey's presentence report or give Bailey sufficient time to review the report prior to sentencing. At the very least, those claims are unexhausted and procedurally defaulted for the same reasons most of Bailey's other claims are, as stated above.

In sum, all but two of Bailey's habeas claims are both unexhausted and procedurally defaulted; Bailey has failed to show that the Alabama court's resolution of the two exhausted claims was unreasonable under AEDPA; and he has failed to allege sufficient facts showing that most of his procedurally defaulted claims have merit regardless. Accordingly, Bailey's habeas petition is due to be **DENIED** and **DISMISSED with prejudice**.

---

[21] Specifically, *Estate of Browning ex rel. v. Las Vegas Metropolitan Police Department*, No. 24-2034, 2026 WL 1978071 (9th Cir. July 8, 2026) (unpublished), *Holberg v. Guerrero*, No. 21-70010, -- F.4th --, 2026 WL 2364671 (5th Cir. Aug. 14, 2026) (en banc), and *Herod v. Guerrero*, No. 25-40247, 2026 WL 2495303 (5th Cir. Aug. 25, 2026).

[22] The August 17 motion further attempts to argue that the Alabama appellate courts improperly disregarded Bailey's *Brady* claim regarding Dr. West's examination report raised in his *pro se* appellate briefing. As has been explained, however, under Alabama law Bailey could not file pro se briefs while represented by counsel, and Bailey expressly requested to be represented by appointed counsel on appeal rather than proceed *pro se*.

**f. Certificate of Appealability**

For habeas petitions brought by persons in state custody, a "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts. "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court." 28 U.S.C. § 2253(c)(1)(A).

Where the district court "has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). Where habeas relief is denied on procedural grounds without reaching the merits of the underlying constitutional claim(s), "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id. See also Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (citations omitted and punctuation modified)). For all cases, "[a] certificate of appealability may issue 'only if the applicant has made a substantial showing of the denial of a constitutional right.' " *Spencer v. United States*, 773 F.3d 1132, 1137 (11th Cir. 2014) (en banc) (quoting 28 U.S.C. § 2253(c)(2)). While "a COA does not require a showing that the appeal will succeed[,]" a "prisoner

seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 337-38 (quotations omitted).

Upon due consideration, the undersigned finds that Bailey should be **DENIED** a certificate of appealability in connection with the dismissal of this habeas action. Bailey has failed to make a substantial showing of the denial of a constitutional right on any of his claims. Additionally, jurists of reason would also not find it debatable whether this Court is wrong to find that most of Bailey's claims are procedurally defaulted.[23]

### g. Appeal *In Forma Pauperis*

"An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." 28 U.S.C. §1915(a)(3).[24]

> A party demonstrates good faith by seeking appellate review of any issue that is not frivolous when examined under an objective standard. *See Coppedge v. United States*, 369 U.S. 438, 445, 82 S. Ct. 917, 921, 8 L. Ed. 2d 21 (1962). An issue is frivolous when it appears that "the legal theories are indisputably meritless." *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (citations omitted). In other words, an IFP action is frivolous, and thus not brought in good faith, if it is "without arguable merit either in law or in fact." *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001). More specifically, "arguable means capable of being convincingly argued." *Sun v. Forrester*, 939 F.2d 924, 925 (11th Cir. 1991) (internal quotations and citations omitted). Nevertheless, where a "claim is arguable, but ultimately will be unsuccessful," it should be allowed to proceed. *Cofield v. Ala. Pub. Serv. Comm'n*, 936 F.2d 512, 515 (11th Cir. 1991).

[23] When a district court denies a certificate of appealability, the petitioner "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

[24] A district court's finding "that an appeal would not be in good faith because no certificate of appealability had been issued … is not enough to explain why the appeal on the merits would not be in good faith, because the standard governing the issuance of a certificate of appealability is not the same as the standard for determining whether an appeal is in good faith. It is more demanding." *Walker v. O'Brien*, 216 F.3d 626, 631 (7th Cir. 2000).

*Ghee v. Retailers Nat. Bank*, 271 F. App'x 858, 859-60 (11th Cir. 2008) (per curiam) (unpublished).

Having considered the issues raised as set forth above, the undersigned finds that any appeal by Bailey of the denial of the present habeas petition would be without merit and therefore not taken in good faith.[25]

### III. *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that Bailey's motions for consideration of new case law (Docs# 33, 34, 35, 36, 37) are **GRANTED**, that his petition for a writ of habeas corpus under 28 U.S.C. § 2254 in this action (Doc# 1, *as supplemented*) is **DENIED** and **DISMISSED with prejudice**, and that Bailey is **DENIED** a Certificate of Appealability in connection with this dismissal. Additionally, the Court certifies that any appeal by Bailey of this judgment would be without merit and therefore not taken in good faith, thus denying him entitlement to appeal *in forma pauperis*.

In light of this order, Bailey's "Motion for Immediate and Favorable Action" dated April 13, 2026 (Doc# 31), is **DENIED**.

Final judgment reflecting this order will be set out by separate document in accordance with Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 4th day of September 2026.

*/s/Kristi K DuBose*
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[25] When a district court denies leave to appeal *in forma pauperis*, the petitioner may file a motion to proceed on appeal *in forma pauperis* with the Court of Appeals in accordance with Federal Rule of Appellate Procedure 24(a)(5).